# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

SHARON BROGDAN,
*individually and as the personal representative*
*of the ESTATE OF TIKEENA ISRAEL*
79 Glenview Lane
Willingboro, NJ  08046

       *Plaintiff,*

   v.

CORRECT CARE SOLUTIONS, LLC
c/o Corporate Creations Network, Inc. Its
Registered Corporate Agent
1001 State Street #1400
Erie, PA 16501
     and
DANIEL SCOTT TELEGA, PA-C
c/o Correct Care Solutions
SCI Cambridge Springs
Medical Staff Office
451 Fullerton Avenue
Cambridge Springs, PA 16403
     and
JASON KLIATCHKO ESTRADA, M.D.
c/o Correct Care Solutions
SCI Cambridge Springs
Medical Staff Office
451 Fullerton Avenue
Cambridge Springs, PA 16403
     and
PARIS BURKE HORAN, M.D.
c/o Correct Care Solutions
SCI Cambridge Springs
Medical Staff Office
451 Fullerton Avenue
Cambridge Springs, PA 16403

      *Defendants.*

CIVIL ACTION

NO.   1:16-cv-12

*JURY TRIAL DEMANDED*

## COMPLAINT

## PARTIES

1.    Plaintiff is **Sharon Brogdan**.

      a.    Plaintiff is a citizen and resident of the State of New Jersey and resides at 79 Glenview Lane, Willingboro, NJ  08046.

      b.    Plaintiff's Decedent is **Tikeena Israel**.  Ms. Israel was born on September 21, 1972 and died on December 16, 2014.

      c.    Plaintiff is the decedent's mother.

      d.    On February 26, 2015, the State of New Jersey, Burlington County Surrogate's Court issued Letters of Administration of the decedent to Plaintiff.

      e.    Plaintiff is also the personal representative of the Estate of Tikeena Israel.

Plaintiff brings this action individually and in her representative capacity on behalf of the Estate of Tikeena Israel.

2.    Defendant Correct Care Solutions, LLC ("**Correct Care**") is a for profit Limited Liability Company whose members, it is believed, are citizens of states other than New Jersey. Correct Care is incorporated in the State of Kansas with a principal place of business in Nashville, Tennessee.  Upon information and belief, Correct Care's registered corporate agent in Pennsylvania is  Corporate Creations Network, Inc. with an address at 1001 State Street #1400, Erie, PA 16501. Correct Care operates numerous medical facilities including one located at 451 Fullerton Avenue Cambridge Springs, PA 16403 (the "Cambridge Springs facility"). Plaintiff is bringing a professional medical liability action against this Defendant.

3.    Defendant Daniel Scott Telega, PA-C ("**PA Telega**") is an individual who, upon information

2

and belief, is a citizen of the Commonwealth of Pennsylvania and is employed by Correct Care to deliver care at its Cambridge Springs facility. At all times relevant hereto, PA Telega was a certified Physicians' Assistant ("**PA-C**") licensed in Pennsylvania. This Defendant maintains a business address at the Cambridge Springs facility at the address captioned above. Plaintiff is bringing a professional medical liability action against this Defendant.

4.      Defendant Jason Kliatchko Estrada, M.D. ("**Dr. Estrada**") is an individual who, upon information and belief, is a citizen of the Commonwealth of Pennsylvania and is employed by Correct Care to deliver care at its Cambridge Springs facility. This Defendant maintains a business address at the Cambridge Springs facility at the address captioned above. Upon information and belief, and according to the Pennsylvania Department of State website, at all times relevant to this action, Dr. Estrada supervised PA Telega in the delivery of health care services pursuant to a written agreement between Dr. Estrada and PA Telega. Plaintiff is bringing a professional medical liability action against this Defendant.

5.      Defendant Paris Burke Horan, M.D. ("**Dr. Horan**") is an individual who, upon information and belief, is a citizen of the Commonwealth of Pennsylvania and is employed by Correct Care to deliver care at its Cambridge Springs facility. This Defendant maintains a business address at the Cambridge Springs facility at the address captioned above. Upon information and belief, and according to the Pennsylvania Department of State website, at all times relevant to this action, Dr. Horan supervised PA Telega in the delivery of health care services pursuant to a written agreement between Dr. Horan and PA Telega. Plaintiff is bringing a professional medical liability action against this Defendant.

3

**JURISDICTION AND VENUE**

6.  Jurisdiction is founded upon diversity of citizenship pursuant to 28 U.S.C. Section 1332. The plaintiff is a citizen of the State of New Jersey. Plaintiff's Decedent's Estate is also a citizen of the State of New Jersey. Upon information and belief, the Defendants are all citizens of States other than New Jersey. The amount in controversy is in excess of $75,000.00 exclusive of interest and costs.

7.  The events resulting in the personal injury of Plaintiff, hereinafter described, all arose in the Western District of Pennsylvania.

**MEDICAL CARE AT CORRECT CARE**

8.  As of December 2014, Tikeena Israel was completely dependent upon the medical care being provided by Correct Care at its Cambridge Springs facility.

9.  Ms. Israel had no choice in her medical care and was being forced to utilize Correct Care at its Cambridge Springs facility.

10. Ms. Israel could not seek a second opinion or seek care at a hospital without approval by the Correct Care staff at its Cambridge Springs facility.

11. On or about Tuesday, December 2, 2014, Ms. Israel presented at the Correct Care Cambridge Springs facility and was seen by PA Telega. At this time, Ms. Israel was complaining of cough, congestion, wheezing and thick white phlegm for the past week. PA Telega diagnosed rhinitis and advised the patient to take over the counter medications. PA Telega failed to perform a proper physical examination such as temperature, pulse, respiration rate, blood pressure, skin condition and abdominal tenderness. PA Telega also failed to take an

4

adequate history.

a.     Upon information and belief, PA Telega failed to perform an adequate or even rudimentary physical examination of Ms. Israel at this time.

b.     Upon information and belief, PA Telega failed to obtain an adequate history at this time.

c.     Upon information and belief, PA Telega discharged the patient without adequate consideration of the patient's true condition.

d.     PA Telega also failed to refer the patient to a physician or to a specialist for further evaluation.

12.    On Tuesday, December 9, 2014, Ms. Israel returned to the Correct Care Cambridge Springs facility and was seen by another Physician's Assistant, Miranda Deering, PA-C who was an employee and agent of Defendant Correct Care. At this time Ms. Deering recorded that the patient was complaining of abdominal pain, nausea, vomiting, diarrhea and was unable to keep food or liquid down.  Ms. Israel reported that she was taking Motrin. She was also noted to have diffuse tenderness.  Ms. Deering diagnosed viral gastritis and discharged the patient without further care.

13.    On Thursday, December 11, 2014, Ms. Israel wrote to her mother an early Christmas card as follows:

> Mom,
>
> I was writing u a letter but since Sunday [December 7] I've been in bed throwing up and not able to eat anything.  I paid ten dollars for some Dr. visit + still feel HORRIBLE!  I have some kind of flu. I will call u  as soon as I can okay. I am in a LOT OF ABDOMINAL PAIN.  I HAVE TO LAY DOWN.

(emphasis in original).

14.     At 8:30 a.m. on Friday, December 12, 2014, Ms. Israel returned to the Correct Care Cambridge Springs facility and was seen once again by PA Telega. Upon information and belief, Ms. Israel reported her history as set forth in her holiday card sent to her mother the day before.  At this visit, PA Telega noted in the chart that Ms. Israel was complaining of persistent abdominal pain which was sharp in character and increased with movement for the past five days. PA Telega recorded that the patient had diffuse tenderness. PA Telega failed to record any physical examination findings such as blood oxygen level, temperature, pulse, respiration rate or blood pressure. PA Telega also failed to take an adequate history. He also failed to properly assess Ms. Israel's abdomen by failing to record if she had any rebound, whether or not the tenderness was localized, if the patient was hypotensive, tachacardic or the state of her skin.  PA Telega also failed to refer the patient to a physician or to a specialist for further evaluation.

15.     Upon information and belief, Ms. Israel had an acute and/or ruptured appendix at the time of the December 12, 2014 visit which went untreated.

16.     At about 10:00 p.m. on Sunday, December 14, 2014, Ms. Israel returned again to the Correct Care Cambridge Springs facility and was seen by Registered Nurse Schneider. At this time, she was still vomiting and an intravenous line was started.  Ms. Israel's blood pressure was 84/39. A physician was called and the decision was made to call an ambulance and send Ms. Israel to Meadville Medical Center, a Hospital. Upon transfer she was noted to be in acute distress.

17.     At no time did a physician ever examine Ms. Israel while she was under the care of Correct

Care.

## SUBSEQUENT MEDICAL CARE AND DEATH

18.     Upon transfer from Correct Care to the hospital, the EMT ambulance workers noted Ms.

Israel's chief complaints as a "GI Bleed" with "coffee ground emesis" and "weakness." Her

blood pressure in the ambulance was recorded as low as 42/21.

19.     Upon arrival at the hospital, Ms. Israel's state was recorded as follows:

> The patient has been unwell for 2 weeks with a flu like illness with
> nausea and frequent vomiting. She is unable to keep any food or
> water down. This morning she vomited a dark brown material.
> EMS were summoned and they noted her blood pressure to be 42
> systolic. They started an IV and infused 300 mL getting her blood
> pressure up into the 60s en route to the hospital. When she
> arrived in the emergency room her blood pressure was 62 systolic
> and she appeared shocky, clammy, cool with a core temperature
> of 95°F. A second IV line was initiated to run 2 lines wide-open.
> A Baerhugger was placed on the patient.

20.     Upon admission at the hospital, Ms. Israel was diagnosed with hypovolemic shock,

pneumoperitoneum, acute renal failure, metabolic acidosis.  Ms. Israel was determined to

have a suspected ruptured appendix.

21.     On Monday, December 15, 2014, an exploratory laparotomy surgery was performed which

included an appendectomy which confirmed a ruptured and necrotic appendix.

22.     After surgery, Ms. Israel remained on a ventilator.

23.     Ms. Israel died in the hospital on Tuesday, December 16, 2014 at approximately 1:57 PM.

24.     The coroner determined that Ms. Israel died of septic shock secondary to appendicitis.

**DAMAGES**

25.    Ms. Israel died as a result of the negligent and inadequate care of the Defendants.

26.    Ms. Israel was 42 years old at the time of her death. Before her appendicitis, Ms. Israel was in generally good health for a person her age with a normal life expectancy.

27.    Ms. Israel's appendicitis was treatable. If properly care for, treated and diagnosed, Ms. Israel would not have died.

28.    As a result of the joint and several actions, omissions and negligence of the Defendants, Ms. Israel experienced great pain, suffering, mental anguish, discomfort, distress, embarrassment, humiliation, loss of life's pleasures and the enjoyment of life, disfigurement, scarring, and other non-economic damages.

29.    As a result of the joint and several actions, omissions and negligence of the Defendants, Ms. Israel suffered financial and economic injuries.

30.    As a result of the joint and several actions, omissions and negligence of the Defendants, Ms. Israel died.


**PUNITIVE DAMAGES**

31.    As of December 2014, Tikeena Israel was completely dependent upon the medical care being provided by Correct Care at its Cambridge Springs facility.

32.    Ms. Israel had no choice in her medical care and was being forced to utilize Correct Care at its Cambridge Springs facility.

33.    Ms. Israel could not seek a second opinion or seek care at a hospital without approval by the Correct Care staff at its Cambridge Springs facility.

34.  It is well known amongst medical professionals that:

a.  Appendicitis is the most common emergent surgical condition of the abdomen in the United States.

b.  Timely diagnosis and treatment of appendicitis are critical in reducing the risk of perforation (a ruptured appendix) which is associated with increased morbidity and mortality.

c.  The mortality rate of appendicitis escalates from less than 1% in non-perforated cases to 5% or more in perforated cases where the perforation is timely treated.

d.  A perforated appendix which is not timely treated often leads to sepsis and death.

e.  Given its prevalence and the consequences of missed or delayed diagnosis, it is paramount that appendicitis be considered in the evaluation of any patient with undifferentiated abdominal pain.

f.  The classic presentation for appendicitis includes the onset of vague abdominal pain (typically epigastric or periumbilical pain) followed by lack of appetite, nausea or vomiting and the migration of pain to the right lower quadrant (RLQ).

g.  Consideration of a diagnosis of appendicitis requires, at a minimum, taking and recording the results of a careful history, an abdominal examination with attempt to locate the source of the pain, noting any movements in the location of the pain over time, basic blood work including a white blood cell and C reactive protein counts, ultrasound and/or CT scan.

35.  A patient with the presentation of Tikeena Israel as of December 12, 2015 must be considered at a high risk of an acute appendicitis including a ruptured appendix.

36.     Defendants failed to take and record the results of a careful history; perform an abdominal

        examination (let alone attempt to locate the source of the pain, noting any movements in the

        location of the pain over time), obtain basic blood work including a white blood cell and C

        reactive protein counts, or obtain an ultrasound and/or CT scan.

37.     Defendants completely ignored Ms. Israel's condition and refused to render her aid.

38.     Defendants failed to provide basic medical services to Ms. Israel.

39.     Defendants knew or should have known that Ms. Israel's condition was serious, was likely

        appendicitis and could result in serious injury, including sepsis and death if not properly

        evaluated and treated.

40.     At no time did a physician ever examine Ms. Israel while she was under the care of Correct

        Care.

41.     Defendants' deviation from the applicable standard of care was so egregious in this case that

        it evidences a conscious or reckless disregard the risk of serious harm to the patient.

42.     Defendants' conduct was reckless.

43.     Defendants' failures, including the failure to evaluate Ms. Israel created great danger to Ms.

        Israel.

44.     Defendants knew or had reason to know of the magnitude of the risk involved in the conduct

        at issue in this case.

45.     Defendants' conduct was outrageous.


**SUPERVISORY ROLES OF DR. HORAN AND DR. ESTRADA**

46.     Under Pennsylvania Law, a physician's assistant, such as PA Telega, may only provide

patient care under the supervision of supervising physicians. See 63 Pa.C.S.A. § 422.13 and 28 Pa. Code § 18.121 et seq, which "provides for the delegation of certain medical tasks to qualified physician assistants by supervising physicians when the delegation is consistent with the written agreement."  28 Pa. Code § 18.121

47.     Under Pennsylvania law, a "supervising physician" is defined as a "physician who is identified in a written agreement as a physician who supervises a physician assistant." 28 Pa. Code § 18.122.

48.     "Supervision" is defined as and consists of:

> (I) Oversight and personal direction of, and responsibility for, the medical services rendered by a physician assistant. The constant physical presence of the supervising physician is not required so long as the supervising physician and the physician assistant are, or can be, easily in contact with each other by radio, telephone or other telecommunications device.
>
> (ii)   An appropriate degree of supervision includes:
>
>> (A)   Active and continuing overview of the physician assistant's activities to determine that the physician's directions are being implemented.
>>
>> (B)   Immediate availability of the supervising physician to the physician assistant for necessary consultations.
>>
>> (C)   Personal and regular review within 10 days by the supervising physician of the patient records upon which entries are made by the physician assistant.

28 Pa. Code § 18.122.

49.     Under these regulations, a physicians' assistant must also have a "Primary supervising physician" who is defined as "[a] medical doctor who is registered with the Board and designated in the written agreement as having primary responsibility for directing and personally supervising the physician assistant." 28 Pa. Code § 18.122.

11

50. The responsibility of a Primary supervising physician is set forth in the Code as follows:

### § 18.144. Responsibility of primary supervising physician.

A primary supervising physician shall assume the following responsibilities. The supervisor shall:

(1) Monitor the compliance of all parties to the written agreement with the standards contained in the written agreement, the act and this subchapter.

(2) Advise any party to the written agreement of the failure to conform with the standards contained in the written agreement, the act and this subchapter.

(3) Arrange for a substitute supervising physician. (See § 18.154 (relating to substitute supervising physician).)

(4) Review directly with the patient the progress of the patient's care as needed based upon the patient's medical condition and prognosis or as requested by the patient.

(5) See each patient while hospitalized at least once.

(6) Provide access to the written agreement upon request and provide clarification of orders and prescriptions by the physician assistant relayed to other health care practitioners.

(7) Accept full professional and legal responsibility for the performance of the physician assistant and the care and treatment of the patients.

28 Pa. Code § 18.122.

51. "A physician assistant may not ... [p]erform a medical service without the supervision of a supervising physician."

52. Under Pennsylvania law, "[t]he physician assistant shall be considered the agent of the supervising physician in the performance of all practice-related activities including the ordering of diagnostic, therapeutic and other medical services." 28 Pa. Code § 18.151(e).

53. As set forth above, the care in question in this case occurred in and around December, 2014.

54. According to the Pennsylvania Department of State licensing information for PA Miranda

Deering (who saw Ms. Israel for Correct Care on December 12, 2014 as set forth above), it appears that PA Deering was actively being supervised pursuant to a written agreement by Dr. Horan as of that time and that (because this was the only written supervisory agreement in effect at the time), Dr. Horan was the primary supervising physician of PA Deering. See Exhibit 1.

55. Upon information and belief, Dr. Horan had supervisory responsibilities with regard to the care of the decedent delivered by PA Deering.

56. According to the Pennsylvania Department of State licensing information for PA Telega, it appears that PA Telega was actively being supervised pursuant to written agreements by both Drs. Estrada and Horan in December 2014.  See Exhibit 2.

57. It is not clear from the publically available information whether Dr. Estrada or Dr. Horan was PA Telega's Primary Supervising Physician.

58. Upon information and belief, either Dr. Estrada or Dr. Horan (or both) had supervisory responsibilities with regard to the care of the decedent delivered by PA Telega.

59. Upon information and belief, Dr. Estrada and/or Dr. Horan was/were responsible for the supervision of Ms. Israel's care within the meaning of the Physician Assistant regulations referenced above.

60. Dr. Estrada and/or Dr. Horan are responsible for the negligent care of Ms. Israel provided by PA Telega and which resulted in Ms. Israel's death.

61. Upon information and belief, Dr. Estrada and/or Dr. Horan provided inadequate and negligent supervision of PA Telega which resulted in Ms. Israel's death.

62. At all times relevant hereto, PA Deering was acting as an agent of Dr. Horan.

63.     At all times relevant hereto, PA Deering was acting as an agent of Drs. Horan and Estrada.

## COUNT I
## NEGLIGENCE

**Plaintiff v. Defendants PA Telega, Dr. Horan and Dr. Estrada**

64.     Plaintiff incorporates the foregoing and subsequent paragraphs as though set forth fully
        herein.

65.     Defendant PA Telega owed Ms. Israel a duty to possess and exercise the degree of skill and
        knowledge ordinarily possessed by physicians' assistants.

66.     Defendants Dr. Horan and Estrada owed Ms. Israel a duty to possess and exercise the degree
        of skill and knowledge ordinarily possessed by physicians and by physicians supervising
        physicians' assistants.

67.     Defendants breached their duties of care to Ms. Israel.

68.     In addition to the breaches of duty detailed above, Defendants' breaches of duty included the
        following:

        a.      Failing to properly evaluate Ms. Israel.

        b.      Failing to promptly have Ms. Israel examined by a physician while under their care.

        c.      Failing to consider appendicitis;

        d.      Failing to perform/obtain a proper history, physical or examination;

        e.      Failing to obtain appropriate blood work;

        f.      Failing to properly examine the patients abdomen;

        g.      Failing to consult specialists;

14

h.      Failing to transfer Ms. Israel to the hospital on or before December 12, 2014;

i.      Failing to make full and complete entries in the patient's chart;

j.      Failing to properly supervise the physician assistant(s) and discharge their duties as the supervising physician(s) (with regard to Drs. Horan and Estrada);

k.      Failing to ensure that Ms. Israel's condition was properly managed;

l.      Failing to closely observe Ms. Israel and treat her condition;

m.      Failing to properly supervise the persons providing care to Ms. Israel;

n.      Failing to advise or recommend further treatment for or examination of Ms. Israel;

o.      Failing to suggest, consult or arrange for a change in Ms. Israel's treatment;

p.      Failing to suggest, consult or arrange for diagnostic testing of Ms. Israel;

q.      Failing to provide the care and attention required by the severity of Ms. Israel's condition;

r.      Abandoning the patient;

s.      Failing to provide even basic care under the circumstances presented;

t.      Recommending a course of treatment that delayed the correct diagnosis and/or treatment of Ms. Israel's condition;

u.      Failing to procure and/or timely procure consultant opinions necessary for the proper diagnosis and treatment of Ms. Israel;

v.      Failing to advocate for the care and treatment of Ms. Israel once they observed, or in the exercise of reasonable care should have observed, that the care and treatment Ms. Israel was receiving was inadequate, insufficient and/or that Ms. Israel was not improving from the care and treatment;

15

69.   Defendants' breaches of duty injured Ms. Israel and was a direct, proximate and factual cause of her injuries and ultimately the death of Ms. Israel.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages against the Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus costs, interest and all other recoverable damages.

**COUNT II**
**NEGLIGENT SUPERVISION**
**RESPONDEAT SUPERIOR**

**Plaintiff v. Dr. Estrada and Dr. Horan**

70.   Plaintiff incorporates the foregoing and subsequent paragraphs as though set forth fully herein.

71.   Defendants are responsible for the actions of the physicians' assistants which they supervised.

72.   Defendants negligently supervised their physician assistant(s) which caused damage to Ms. Israel as described herein.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages against the Defendant named in this count, jointly and severally, in an amount in excess of $150,000 plus costs, interest and all other recoverable damages.

## COUNT III
## CORPORATE NEGLIGENCE

### Plaintiff v. Correct Care Solutions, LLC

73.   Plaintiff incorporates the foregoing and subsequent paragraphs as though set forth fully herein.

74.   The foregoing and subsequent paragraphs are incorporated herein by reference as if set forth fully herein.

75.   Defendant Correct Care had the duties including to (1) use reasonable care in the maintenance of safe and adequate facilities and equipment; (2) select and retain only competent physicians; (3) oversee all persons who practice medicine within its walls as to patient care; and (4) formulate, adopt and enforce adequate rules  and policies to ensure quality care for the patients. *Thompson v. Nason Hosp.*, 527 Pa. 330, 340 (Pa. 1991).

76.   Upon information and belief, Correct Care allowed its physician's assistants PA Deering and Telega to provide patient care with inadequate supervision from a physician as required by law.

77.   Upon information and belief, Correct Care did not actually have a physician in its Cambridge Springs facility at the times that Ms. Israel presented on December 2, December 9 and December 12, 2014 even though it should expect acute patients with significant medical problems (such as Ms. Israel) to present at the facility.

78.   By failing to have a physician present or readily available at the foregoing times, Defendant failed to maintain a safe and adequate facility.

79.   Correct Care failed to properly oversee all persons who practiced medicine at its facility

including PA Telega with regard as to patient care, and participated in sub standard care to Ms. Israel.

80. Correct Care failed to formulate, adopt and enforce rule and policies to ensure quality patient care including requiring PA Telega to take adequate and complete physical and historical information

81. Correct Care's breaches of these duties are a direct and proximate cause of Ms. Israel's injuries and/or substantially contributed to those injuries.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages against the Defendant named in this count, jointly and severally, in an amount in excess of $150,000 plus costs, interest and all other recoverable damages.


## COUNT IV
## RESPONDEAT SUPERIOR / VICARIOUS LIABILITY

### Plaintiff v. Correct Care Solutions, LLC

82. Plaintiff incorporates the foregoing and subsequent paragraphs as though set forth fully herein.

83. PA Telega, PA Deering, Dr. Estrada and Dr. Horan were employees and agents of Defendant Correct Care with regard to the care delivered to Ms. Israel at the Correct Care facility in Cambridge Springs.

84. Correct Care is responsible and liable for the damages and injuries set forth in the Complaint with regard to the care delivered at its facility in Cambridge Springs.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages against the

Defendant named in this count, jointly and severally, in an amount in excess of $150,000 plus costs, interest and all other recoverable damages.

## COUNT V
## WRONGFUL DEATH

### Plaintiff v. All Defendants

85.   The foregoing and subsequent paragraphs are incorporated herein by reference as if set forth fully herein.

86.   Plaintiff brings this action on behalf of the survivors of Ms. Israel under and by virtue of the laws of the Commonwealth of Pennsylvania, 42 Pa. C.S.A. §8301 and Pa. R.C.P. 2202(a).

87.   Plaintiff claims damages for pecuniary loss suffered by Ms. Israel's survivors by reason of her death as well as reimbursement for medical bills, funeral expenses, administrative and other expenses incurred in connection therewith.

88.   As a result of the death of Plaintiff's Decedent, her survivors have been deprived of the earnings, maintenance, guidance, support, consortium, counsel, aid, association, care, services and comfort that they would have received from her for the rest of her natural life.

89.   The Decedent, Tikeena Israel, did not bring an action against the Defendants during her lifetime and no other action for the death of Ms. Israel has been commenced against the Defendants or any other persons.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages against the Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus costs, interest and all other recoverable damages.

## COUNT VI
## SURVIVAL

### Plaintiff v. All Defendants

90.     The foregoing and subsequent paragraphs are incorporated herein by reference as if set forth fully herein.

91.     The Plaintiff, as executrix of the estate of Ms. Israel brings action on behalf of the estate of Plaintiff's Decedent under and by virtue of the laws of the Commonwealth of Pennsylvania, 20 Pa. C.S.A. §3373 and 42 Pa. C.S.A. §8302.

92.     As a direct and proximate result of Defendants' afore described acts and omissions of negligence, carelessness, recklessness, and/or intentional conduct, Plaintiff's Decedent suffered and Defendants are liable for damages, including, but not limited to,

    a.     Decedent's pain and suffering between the time of his injuries and his death;

    b.     Decedent's financial losses suffered as a result of his death;

    c.     Decedent's loss of enjoyment of life;

    d.     and all other damages recoverable according to law; and

    e.     Such other damages as may be proven at trial.

**WHEREFORE**, Plaintiff requests compensatory and punitive damages against the Defendants named in this count, jointly and severally, in an amount in excess of $150,000 plus costs, interest and all other recoverable damages.

## CERTIFICATES OF MERIT

93.     The Certificate of Merit as to Defendant Correct Care Solutions, LLC is attached hereto

as Exhibit 3.

94.    The Certificate of Merit as to Defendant Daniel Scott Telega, PA-C is attached hereto as

Exhibit 4.

95.    The Certificate of Merit as to Defendant Jason Kliatchko Estrada, M.D. is attached hereto

as Exhibit 5.

96.    The Certificate of Merit as to Defendant Paris Burke Horan, M.D. is attached hereto as

Exhibit 6.


                                        **JOKELSON LAW GROUP, P.C.**


                         By: _____
                                        Derek E. Jokelson, Esquire
                                        David E. Jokelson, Esquire
                                        230 S. Broad Street, 10th Floor
                                        Philadelphia, Pa. 19102
                                        (215) 735-7556

                                        *Attorneys for Plaintiff*

Date:  January 12, 2016